UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES JUNIOR MILLER,

      Defendant-Movant,

v.

UNITED STATES OF AMERICA,

      Plaintiff-Respondent.

_____/

Case No. 1:22-cv-437

Honorable Paul L. Maloney

**OPINION AND ORDER**

Currently pending before the Court is Defendant-Movant James Junior Miller ("Defendant")'s counseled motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) For the reasons set forth below, Defendant's motion will be denied.

I.    **Background**

On September 26, 2018, Defendant was charged in a Criminal Complaint with: (1) possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(b)(1)(B)(iii), (C), & (D); (2) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (3) possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *See* Crim. Compl., *United States v. Miller*, No. 1:18-cr-220 (W.D. Mich.) (ECF No. 1). After Defendant's arrest, Assistant Federal Public Defender Sean Tilton was appointed to represent him. However, shortly thereafter, Cirilio Martinez was appointed to represent Defendant due to a conflict.

On October 10, 2018, a grand jury returned an Indictment charging Defendant with: (1) possession with intent to distribute cocaine base, cocaine, and marijuana, in violation of 21

U.S.C. § 841(a)(1), (b)(1)(C), & (b)(1)(D); (2) possession with intent to distribute cocaine base and cocaine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C); (3) possession with intent to distribute cocaine base, cocaine, and marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), (b)(1)(C), & (b)(1)(D); (4) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (5) possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i); (6) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C); (7) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (8) possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *See* Indictment, *id.* (ECF No. 15). On October 19, 2018, the government filed an Information and Notice of Prior Drug Conviction, noting that Defendant had previously been convicted of possession with intent to distribute cocaine, in violation of Mich. Comp. Laws § 333.7401(2)(a)(iv), and that he would be subject to enhanced penalties if convicted of Counts One, Two, Three, and Four because of that prior conviction. *See* Information, *id.* (ECF No. 25).

On February 25, 2019, Defendant, through counsel, filed a motion to suppress, arguing that law enforcement illegally seized evidence from the vehicles Defendant was driving on three separate occasions, and also seeking suppression of evidence found via a search warrant. *See* Mot. to Suppress, *id.* (ECF No. 32). Defendant also filed a motion for release of exculpatory and impeachment evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). *See* Mot., *id.* (ECF No. 34). The Court held a hearing regarding the motions on March 7, 2019, and issued orders denying the motions on March 11, 2019. *See* Orders, *id.* (ECF Nos. 53, 54).

On March 7, 2019, attorney Martinez moved to withdraw as counsel, citing irreconcilable differences. *See* Mot., *id.* (ECF No. 50). The Court denied that motion in an order entered on March

3

11, 2019. *See* Order, *id.* (ECF No. 54). The next day, attorney W. Culpepper, who had been retained by Defendant, filed a motion to substitute attorney. *See* Mot., *id.* (ECF No. 55). The Court granted that motion in an order entered the same day. *See* Order, *id.* (ECF No. 57).

On July 9, 2019, a grand jury returned a Superseding Indictment charging Defendant with the same eight charges set forth in the original Indictment. *See* Superseding Indictment, *id.* (ECF No. 64). However, with respect to Count Three, possession with intent to distribute cocaine base, cocaine, and marijuana, the Superseding Indictment set forth that Defendant had previously been convicted of a serious drug felony, namely Controlled Substance—Delivery/Manufacture, in violation of Mich. Comp. Laws § 333.7401(2)(a)(iv). *See id.* (ECF No. 64, PageID.641). The next day, the government filed an Amended Information and Notice of Prior Felony Drug Conviction and Serious Drug Felony, setting forth that offense and noting that Defendant would be subject to enhanced penalties if convicted on Counts On, Two, Three, and Six of the Superseding Indictment because of that prior felony. *See* Am. Information, *id.* (ECF No. 66).

On August 6, 2019, attorney Culpepper filed a motion to withdraw, citing a breakdown in the attorney-client relationship. *See* Mot., *id.* (ECF No. 70). On August 13, 2019, attorney Heath Michael Lynch appeared on Defendant's behalf. On August 14, 2019, the Court entered orders approving a motion to substitute counsel and dismissing as moot attorney Culpepper's motion to withdraw. *See* Orders, *id.* (ECF Nos. 74, 75).

On September 17, 2019, Defendant, through attorney Lynch, filed another motion to suppress, seeking suppression of evidence obtained "through unconstitutional searches and seizures carried out during the multi-year investigation" of Defendant. *See* Mot. to Suppress, *id.* (ECF No. 80). On September 18, 2019, the Court entered an order interpreting the motion as a motion for reconsideration and denying it. *See* Order, *id.* (ECF No. 82).

On September 20, 2019, the government filed a conditional plea agreement in which Defendant agreed to plead guilty to Counts Three and Five of the Superseding Indictment, charging him with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *See* Plea Agreement, *id.* (ECF No. 85, PageID.899). Defendant reserved the right to appeal the denial of his motion to suppress. *Id.* The agreement noted that if Defendant prevailed on appeal, he would be allowed to withdraw his guilty plea. *Id.* Defendant appeared before the undersigned for his change of plea hearing on September 20, 2019. *See* Change of Plea Hr'g Tr., *id.* (ECF No. 126).

On October 23, 2019, Defendant filed a *pro se* motion to withdraw his guilty plea. *See* Mot., *id.* (ECF No. 91). Defendant contended that he wished to withdraw his plea "on the grounds of the drug quantity and ineffective assistance of counsel." *Id.* (ECF No. 91, PageID.916). Defendant insisted that counsel misled him regarding his offense level and criminal history category points. *Id.* (ECF No. 91, PageID.917). The Court held a hearing regarding Defendant's motion on December 2, 2019. *See* Mot. Hr'g Tr., *id.* (ECF No. 127). That same day, the Court entered an order denying Defendant's motion. *See* Order, *id.* (ECF No. 99).

On December 6, 2019, Defendant filed a *pro se* motion to substitute counsel. *See* Mot., *id.* (ECF No. 102). In an order entered on December 10, 2019, the Court granted that motion. *See* Order, *id.* (ECF No. 103). Richard Zambon was then appointed to represent Defendant.

The parties appeared for Defendant's sentencing on March 23, 2020. The Court sentenced Defendant to 130 months of incarceration on Count Three, and a consecutive 60 months of incarceration on Count Five, for a total of 190 months of incarceration. *See* J., *id.* (ECF No. 120).

Defendant subsequently appealed, and the United States Court of Appeals for the Sixth Circuit granted attorney Zambon's motion to withdraw. *See* 6th Cir. Order, *id.* (ECF No. 124). David Camp was appointed to represent Defendant on appeal. On appeal, Defendant challenged the denial of his motion to suppress. *See United States v. Miller*, 850 F. App'x 370, 371 (6th Cir. 2021). The Sixth Circuit affirmed the denial of the motion to suppress on March 23, 2021. *See id.* Defendant did not petition the United States Supreme Court for a writ of certiorari.

Defendant, through counsel, filed his § 2255 motion (ECF No. 1) on May 13, 2022. In an order (ECF No. 3) entered that same day, the Court directed the government to file a response to the motion. The government subsequently moved for an extension of time and an order authorizing release of information subject to the attorney-client privilege. (ECF No. 4.) The Court granted that motion in an order (ECF No. 6) entered on May 18, 2022. Subsequently, attorneys Martinez, Zambon, and Lynch filed affidavits responding to Defendant's claims of ineffective assistance. (ECF Nos. 7, 8, 9.) The government filed its response as well as an affidavit from attorney Camp (ECF Nos. 10, 10-3) on July 14, 2022, and Defendant filed a reply (ECF No. 11) on July 26, 2022.

## II.    Analysis

### A.    Legal Standards

#### 1.    Section 2255 Proceedings in General

A federal prisoner may challenge his sentence by filing in the district court where he was sentenced a motion under 28 U.S.C. § 2255. A valid § 2255 motion requires a movant to show that "the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Section 2255 affords relief for a claimed constitutional error only when the error had a substantial and injurious effect or influence on the proceedings. *Watson v. United States*, 165 F.3d 486, 488

6

(6th Cir. 1999). Non-constitutional errors generally are outside the scope of § 2255 relief, and they should afford collateral relief only when they create a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (internal quotation marks omitted). As a general rule, a claim not raised on direct review is procedurally defaulted and may not be raised on collateral review absent a showing of either (1) cause and actual prejudice; or (2) actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart*, 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973).

### 2.    Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a movant must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant in a way that led to an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, and viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential." *Roe v. Flores-Ortega*, 528 U.S.460, 477 (2000) (internal quotation marks omitted). Counsel is not ineffective unless he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To establish prejudice, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694; *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc) ("[T]he threshold issue is

not whether [movant's] attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory.").

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

### 3.    Evidentiary Hearing

The Court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

### B.    Discussion

Defendant raises the following grounds for relief in his § 2255 motion:

8

I.      [Defendant's] right to the effective assistance of counsel was violated during plea when counsel failed to argue that the doctrine of collateral estoppel required that evidence seized at the time of [Defendant's] arrest on July 25, 2018[,] be suppressed.

II.     [Defendant's] right to the effective assistance of counsel was violated at sentencing when counsel failed to make objections and arguments that would have resulted in a lower sentence.

III.    [Defendant's] right to the effective assistance of counsel was violated on direct appeal when counsel failed to challenge the sentence imposed when the district court erroneously applied a 6-level enhancement under U.S.S.G. § 3A1.2(c)(1).

(ECF No. 1-1, PageID.15 (capitalization corrected).) The government contends that all of Defendant's claims lack merit. (ECF No. 10.)

### 1.    Ground I—Ineffective Assistance Pre-Plea and Regarding Plea Negotiations

In ground I, Defendant contends that counsel was ineffective in two ways pre-plea and regarding plea negotiations. First, Defendant contends that counsel "failed to argue that the doctrine of collateral estoppel required that evidence seized at the time of [Defendant's] arrest on July 25, 2018[,] be suppressed." (ECF No. 1-1, PageID.15.) Second, Defendant argues that if counsel had advised him of potential defenses and had not unreasonably pressured him to accept the plea agreement by "demanding more money if he did not sign," Defendant "would not have pleaded guilty but would have proceeded to trial." (*Id.*) The Court considers each argument in turn below.

### a.    Collateral Estoppel

Defendant first argues that counsel "failed to argue that the doctrine of collateral estoppel required that the evidence seized at the time of [Defendant's] arrest on July 25, 2018[,] be suppressed." (ECF No. 1-1, PageID.15.) According to Defendant, counsel did seek to suppress the evidence from this arrest, but the failure to assert collateral estoppel was crucial because 63 grams

of cocaine and 23 grams of crack cocaine were seized. (*Id.*, PageID.32.) Defendant argues that if counsel had successfully asserted that collateral estoppel applied, "at least 23 grams of cocaine base would have been excluded from evidence and Count Two would have been dismissed." (*Id.*) Defendant argues further that counsel could have also argued that Defendant's "subsequent arrest on August 17, 2018[,] stemmed from the illegal seizures that occurred on July 25, 2018, should also be suppressed," which would be a defense to Counts Two through Six. (*Id.*)

Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suites based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). Thus, "[i]n criminal prosecutions, as in civil litigation, the issue-preclusion principle means that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Bravo-Fernandez v. United States*, 580 U.S. 5, 7–8 (2016) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)).

On July 25, 2018, police used a confidential informant to purchase crack cocaine from Defendant. *See* Mot. Hr'g Tr., *United States v. Miller*, No. 1:18-cr-220 (W.D. Mich.) (ECF No. 79, PageID.716). After Defendant left the deal, uniformed police pulled Defendant over and seized additional cocaine from the vehicle. *Id.* (ECF No. 79, PageID.737–741). The 54A District Court in Lansing, Michigan concluded that the traffic stop was unconstitutional and suppressed the resulting evidence. (*See* ECF No. 10, PageID.86.) Defendant then moved to suppress the same evidence after he was indicted in this Court. Following testimony at the suppression hearing, the Court stated:

> Well, the Court notes, indeed, the Court has had the benefit of the filing of the transcript of the State Court hearing, and my colleague in State Court, for the

> reasons that he stated on the record, suppressed the evidence here, which was the subject matter of this traffic stop on July 25th, 2018. Given the fact that this case is now in federal court, the Court now has an independent obligation to assess the validity of the search and seizure in this case. That's *Elkins v. United States*, at 364 U.S. 206, a 1960 case. The government asserts that the State Court got that motion wrong on the merits for the reasons that Mr. Roth stated on the record moments ago.

*See* Mot. Hr'g Tr., *United States v. Miller*, No. 1:18-cr-220 (W.D. Mich.) (ECF No. 79, PageID.810). The Court then went on to disagree with the state court regarding the timing of the traffic stop, noting that it occurred "just about as quickly as possible," minutes after the controlled buy. *Id.* The Court also found credible Sergeant Williams' testimony that he believed Defendant had committed a traffic violation by disregarding a traffic light. *Id.* (ECF No. 79, PageID.811). The Court went on to state that even if that conclusion was erroneous, "there was clearly probable cause to believe that the defendant had committed a felony in delivering the drugs to the confidential informant." *Id.*

Attorney Martinez has responded to Defendant's claim of ineffective assistance, stating that he did assert collateral estoppel in his motion to suppress. (ECF No. 7, PageID.63.) Attorney Martinez avers that he referred to the state court's order suppressing all evidence flowing from the stop that occurred on July 25, 2018. (*Id.*) Attorney Martinez also cited to *Elkins* for the proposition that "evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial." (*Id.*)

Even if attorney Martinez failed to explicitly argue collateral estoppel, his failure to do so was not deficient and did not prejudice Defendant in any way. Here, Defendant's state and federal prosecutions involved different parties. "[I]t would be anomalous indeed" if the federal government were denied the "lesser power of proving the underlying facts of such offenses" when

charged by both state and federal authorities. *See United States v. Tirrell*, 120 F.3d 670, 676 (7th Cir. 1997). Moreover, the Eighth Circuit has explicitly stated that the "collateral estoppel and res judicata doctrines do not apply when different sovereigns and, thus, different parties are involved in criminal litigation." *United States v. Kummer*, 15 F.3d 1455, 1461 (8th Cir. 1994).

Defendant's reliance on the doctrine of collateral estoppel is also foreclosed by Sixth Circuit precedent. In *Tinsley v. United States*, the Sixth Circuit addressed Tinsley's appeal from the district court's denial of his § 2255 motion. *See Tinsley v. United States*, No. 95-5564, 1997 WL 63156, at *1 (6th Cir. Feb. 12, 1997). In his § 2255 motion, Tinsley had argued that "the district court erred in admitting evidence from the October 30, 1987[,] search based on the Lincoln Circuit court's earlier suppression of the same evidence." *Id.* at *7. The Sixth Circuit, citing *Elkins*, concluded that Tinsley's argument lacked merit. *Id.* Specifically, the Sixth Circuit noted that, under *Elkins*, the district court "properly made an independent determination of the admissibility of the evidence" and that Tinsley's "argument that the district court should have been constrained by the prior evidentiary rulings of the state court lacks merit." *Id.* Prior to *Tinsley*, the Sixth Circuit ruled similarly in *United States v. Lloyd*, stating that "[a] prior adverse suppression decision in a state court simply does not preclude the federal government, which was not a party to the state action, from using the evidence in a federal proceeding. *United States v. Lloyd*, 10 F.3d 1197, 1209 (6th Cir. 1993).

Likewise, in 2004, the Sixth Circuit considered "the interest issue of what preclusive force a Michigan state criminal proceeding may have upon the course of a subsequent federal criminal proceeding." *United States v. Dominguez*, 359 F.3d 839, 841 (6th Cir. 2004). Dominguez was charged in Michigan state court with drug trafficking charges after a joint state-federal task force executed a search warrant and found cocaine in Dominguez's car. *Id.* The state trial court

suppressed all the evidence and dismissed the state charges against Dominguez without prejudice. *Id.* The federal government subsequently indicted Dominguez on federal drug trafficking charges. *Id.* Dominguez moved to suppress the evidence, and the district court granted his motion after finding "that the United States was collaterally estopped from litigating that issue as a privy to the state of Michigan." *Id.* The government then appealed. *Id.*

The panel in *Dominguez* concluded that the district court had misinterpreted applicable state law, reversed the grant of the motion to suppress, and remanded for further proceedings. *Id.* The Sixth Circuit concluded that "a Michigan court applying Michigan law would not find based upon the facts in the record that the United States was in privity with the Michigan prosecutor in the prior state proceeding." *Id.* at 845. The panel went on to note that "[e]ven if Michigan law did create privity between the federal and state governments as a matter of law, we would have grave doubts as to the propriety of estopping a federal prosecutor on these grounds." *Id.*

In light of the foregoing authority, any further argument by attorney Martinez that the state court's ruling that suppressed all evidence flowing from the July 25, 2018, traffic stop should be given preclusive effect under the doctrine of collateral estoppel would have been meritless. Counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (noting that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"). Moreover, Defendant cannot demonstrate prejudice, as this Court explicitly noted that under *Elkins*, a federal court "must make an independent inquiry" when determining "whether there has been an unreasonable search and seizure by state officers . . . whether or not there has been such an inquiry by state court, and irrespective of how any such inquiry may have turned out." *Elkins v. United States*, 364 U.S. 206, 223–24 (1960). The Court

had the benefit of the state court suppression hearing transcript but nevertheless did not agree with the state court's conclusions. Because Defendant has demonstrated neither deficient performance nor prejudice, he is not entitled to relief with respect to this assertion of ineffective assistance of counsel.

### b.    Plea Proceedings

Next, Defendant contends that had counsel advised him "of the potential defenses to the charges and not unreasonably pressured [Defendant] into accepting the plea agreement by demanding more money if he did not sign the agreement, [Defendant] would not have pleaded guilty but would have proceeded to trial." (ECF No. 1-1, PageID.33.) Defendant contends that the "omitted advice concerning the suppression of the July 25, 2018[,] arrest and the doctrine of collateral estoppel was critical to [his] decision to enter a plea agreement." (*Id.*, PageID.36–37.)

Defendant has attached a sworn declaration to his § 2255 motion, in which he states:

> I wanted to proceed to trial but I felt pressured into entering the plea agreement by my attorney. Immediately after my competency hearing, my attorney gave me a plea agreement and told me to sign it. My attorney told me that there was no defense to the charges and that I would be convicted at trial and receive a sentence in the range of 220 to 360 months. He told me that if I signed the plea agreement, my offense level would be 26 and his Criminal History Category was VI, which would have been a range of 120 to 150 months' imprisonment. He told me that I needed to accept the plea agreement or pay him more if I wanted to go to trial. I could not pay my attorney more to go to trial. And because I could not pay more, my attorney would not prepare for trial. Therefore, I believed I had to sign the plea agreement.

> Had I known there was a potential defense to the charges and had my attorney not pressured me into signing the plea agreement I would have never entered the plea agreement and I would have instructed my attorney to prepare for trial.

(ECF No. 1-2, PageID.49.)

To determine whether a guilty plea is valid, the Court must consider "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S.

25, 31 (1970)). A constitutionally valid guilty plea must meet several requirements. First, the defendant must be competent to plead guilty. *See Brady v. United States*, 397 U.S. 742, 756 (1970). "[T]he standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against h[er].'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). The defendant must also have notice of the nature of the charges against him. *See Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). The defendant must enter the plea voluntarily, i.e., the plea cannot be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant." *Brady*, 397 U.S. at 750; *see also Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").

The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." (internal quotations and citation omitted)). Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267–68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754

15

(suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel can render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56–57.

The *Strickland* test applies to guilty plea challenges based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. In the context of guilty pleas, the first prong of *Strickland* remains the same, and the "second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 58–59. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Attorney Lynch has addressed Defendant's claim in his affidavit. He avers that he met with Defendant to "discuss specifics regarding possible evidentiary motions." (ECF No. 9, PageID.71–72, ¶ 3.) Attorney Lynch "familiarized [himself] with motions filed by predecessor counsel Cirilo Martinez and the respective responses from the U.S. Attorney's Office." (*Id.*, PageID.72, ¶ 3.) He also "had numerous discussions with Mr. Miller about mandatory minimum sentences that applied to certain crimes with which he had been charged, and the potentially applicable sentencing guidelines." (*Id.*) Attorney Lynch also explained to Defendant "the potential risks and benefits of a guilty plea, and of a jury trial." (*Id.*)

Attorney Lynch goes on to state:

> I timely filed a dispositive evidentiary motion on behalf of Mr. Miller. After the U.S. Attorney's Office filed its response, the Court denied the motion. I promptly communicated the Court's decision to Mr. Miller and discussed with him his options, including the option of taking his case to trial. As is my practice with any client who may want a trial, I discussed with Mr. Miller and Angela Miller the anticipated costs of a jury trial. Assisted by . . . colleagues, I began trial preparations, knowing that if Mr. Miller decided he wanted a trial, I had to be ready to pick a jury and try his case.

> On September 20, 2019, I traveled to meet Mr. Miller in the U.S. Marshals Service lockup in Kalamazoo. During that meeting, we again discussed the final plea offer

extended by the U.S. Attorney's Office and my good faith estimate of the sentencing guidelines (and mandatory minimums) that would apply to him if he accepted the plea offer. We also discussed my good faith estimate of the alternative sentencing guidelines (and mandatory minimums) that likely would apply if he proceeded to trial and was convicted. We went over multiple scenarios during our meeting, including the viability of trial defenses.

At no time did I pressure Mr. Miller to accept any plea offer. At no time did I tell Mr. Miller to sign a plea agreement. Any discussions about potential costs of trial were consistent with discussions I previously had with Mr. Miller and his wife, and I made clear to Mr. Miller that if he decided he wanted a trial, I would try the case for him. I did not threaten him that I would not prepare for his trial, or that I would stop vigorously representing him, if he did not pay me more.

After lengthy discussions during which I made it clear that it was Mr. Miller's choice alone whether to go to trial, but that I would support him whatever he chose, Mr. Miller signed the plea agreement and pled guilty. Based on all the information available to me at that time and now, Mr. Miller pled guilty knowingly, voluntarily, and without coercion, and he did so freely and of his own volition.

(*Id.*, PageID.73–74, ¶¶ 7–10.)

Attorney Lynch's affidavit is corroborated by the record in Defendant's criminal proceedings. When Defendant signed his plea agreement, he did so under the following paragraph:

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

*See* Plea Agreement, *United States v. Miller*, No. 1:18-cr-220 W.D. Mich.) (ECF No. 85, PageID.908). Attorney Lynch signed under the following paragraph:

I am James Junior Miller's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

*Id.*

Moreover, during the change of plea hearing, attorney Lynch represented that "during the time that lapsed between the early proceeding regarding the competency question and now, Mr. Miller and I took the opportunity to go line by line through the written plea agreement." *See* Change of Plea Hr'g Tr., *id.* (ECF No. 126, PageID.1091). After being placed under oath, Defendant confirmed that attorney Lynch had gone "over the plea agreement with [him] line by line." *Id.* (ECF No. 126, PageID.1092).

When asked if anyone had threatened him, forced him, or coerced him to plead guilty, Defendant responded in the negative. *Id.* (ECF No. 126, PageID.1099). Defendant noted that no promises, apart from those set forth in the plea agreement, had been made. *Id.* Defendant noted that he was pleading guilty "freely and voluntarily." *Id.* Defendant went on to affirm that attorney Lynch had gone over "the potential advisory [sentencing] guideline ranges" with him. *Id.* (ECF No. 126, PageID.1101). Defendant understood that there was no agreement between counsel and the Court "as to what the guideline range is going to be." *Id.*

At the end of the change of plea hearing, the undersigned concluded that Defendant's pleas were "freely and voluntarily entered without promises of leniency or benefit, except as stated in the plea agreement." *Id.* (ECF No. 126, PageID.1104–1105). The Court "[found] no evidence of force or coercion." *Id.* (ECF No. 126, PageID.1105).

As set forth above, Defendant did file a *pro se* motion to withdraw his guilty plea on October 23, 2019. *See* Mot., *id.* (ECF No. 91). Defendant sought to withdraw his guilty plea based upon the amount of cocaine base that the government asserted was involved. *Id.* (ECF No. 91, PageID.916). Defendant also argued that counsel had misled him regarding the offense level and criminal history category. *Id.* Additionally, Defendant asserted that he felt pressured to accept the plea agreement because his funds were exhausted and counsel said that he "wasn't working for

free." *Id.* (ECF No. 91, PageID.917). Attorney Lynch filed a response refuting Defendant's allegations of ineffective assistance. *See* Resp., *id.* (ECF No. 93). The government filed a response opposing Defendant's motion to withdraw his plea. *See* Resp., *id.* (ECF No. 94).

The Court held a hearing regarding Defendant's motion to withdraw his guilty plea on December 2, 2019. *See* Mot. Hr'g Tr., *id.* (ECF No. 127). During that hearing, the Court questioned Defendant extensively regarding the concerns raised in his motion, as well as his responses to the Court's questions during his change of plea hearing. Attorney Lynch and the government orally responded to Defendant's concerns.

After hearing from Defendant again, the Court orally denied Defendant's motion to withdraw his guilty plea. The Court stated: "It is inconceivable to me that Mr. Lynch did not fully advise Mr. Miller the consequences of going to trial or pleading guilty." *Id.* (ECF No. 127, PageID.1141). The Court concluded that Defendant's assertion "now that he was confused is patently ridiculous." *Id.* The Court referred to Defendant as a "manipulator," noting that Defendant "knows the system." *Id.* (ECF No. 127, PageID.1142). The Court rejected Defendant's factual assertions, noting the "contradictions that he's made multiple times, even in court here today." *Id.* Overall, the Court concluded that there was "no fair and just reason for the withdrawal." *Id.* (ECF No. 127, PageID.1143).

Here, Defendant "offers no evidence—beyond [his self-serving assertions in his affidavit]—to suggest that his plea was unknowing or involuntary." *See United States v. Sturgill*, 761 F. App'x 578, 582 (6th Cir. 2009). Under settled Sixth Circuit authority, Defendant is bound by the statements that he made under oath at the change of plea hearing. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure [under Rule 11 of the Federal Rules of Criminal Procedure], 'the defendant is bound by

his statements in response to that court's inquiry.'") (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). There is no suggestion here that the Court failed to comply with its obligations under Rule 11. *See United States v. Ataya*, 884 F.3d 318, 323–26 (6th Cir. 2018).

In light of the foregoing, the record before the Court clearly establishes that attorney Lynch did not render ineffective assistance with respect to his advice concerning whether Defendant should enter into the plea agreement. Defendant, therefore, is not entitled to relief with respect to this assertion of ineffective assistance.

In sum, Defendant has not demonstrated that attorney Martinez was ineffective for failing to argue the doctrine of collateral estoppel in connection with his motion to suppress. Likewise, Defendant has not demonstrated that attorney Lynch was ineffective during plea negotiations and the change of plea process. Defendant, therefore, is not entitled to relief with respect to ground I.

### 2.    Ground II—Ineffective Assistance at Sentencing

As his second ground for relief, Defendant argues that attorney Zambon was ineffective at sentencing for failing "to make objections and arguments that would have resulted in the Court imposing a lower sentence." (ECF No. 1-1, PageID.38.)

First, Defendant argues that attorney Zambon "failed to argue that the drugs seized from the July 25, 2018 arrest of [Defendant] should have been excluded from the sentencing calculus." (*Id.*, PageID.40.) In support of that assertion, Defendant avers that because a state court had already concluded that Defendant's July 25, 2018, arrest was unconstitutional and had suppressed all evidence stemming from that arrest, the 23.9 grams of cocaine base and 63.49 grams of cocaine seized from that arrest should not have been included in the total drug quantity attributed to Defendant. (*Id.*) Those amounts equaled a total of 98.04 kilograms of converted drug amount. (*Id.*)

As discussed *supra*, collateral estoppel did not apply to preclude inclusion of the drugs seized on July 25, 2018, in the total drug weight attributable to Defendant. Moreover, attorney

Zambon has addressed this assertion in his affidavit, stating that Defendant's assertion "reflect[s] a woeful misunderstanding of the law." (ECF No. 8, PageID.66.) Notably, attorney Zambon states:

> [Defendant] fails to note that even if the court had not included the "98.04 kilograms of converted drug amount" the Base Offense Level would not have changed. Paragraph 49 of the presentence investigation report determined that in totality the amount of controlled substances attributable to [Defendant] was "349.31 kilograms of converted drug weight" which resulted in a Base Offense Level of 24 pursuant to USSG 2D1.1. That section of the guidelines calls for a Base Offense Level of 24 "for offenses involving at least 100 kilograms, but less than 400 kilograms of converted drug weight." Subtracting 98.04 kilograms from 349.31 kilograms resulted in 251.27 kilograms of converted drug weight which is "at least 100 kilograms but less than 400 kilograms of converted drug weight." Therefore the same Base Offense Level, 24, would apply and the "sentencing calculus" would not have changed.

(*Id.* at 67–68.)

The Court's review of the applicable Guideline is entirely consistent with attorney Zambon's statement. Any argument by attorney Zambon for excluding the 98.04 kilograms of converted drug weight would have been meritless, and counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig*, 162 F.3d at 459. Defendant, therefore, is not entitled to relief with respect to this assertion of ineffective assistance regarding attorney Zambon.

Next, Defendant faults attorney Zambon for "fail[ing] to request a downward variance and a minimum sentence due to the unjust disparity in punishment between powder cocaine and cocaine base." (ECF No. 1-1, PageID.40.) Defendant argues that district courts "have the discretion to conclude that the sentencing guidelines' disparate treatment of cocaine base and powdered cocaine yields a sentence that is greater than necessary to achieve the purposes of [18 U.S.C.] § 3553(a)." (*Id.*, PageID.42.) According to Defendant, if attorney Zambon had raised this argument and persuaded the Court to penalize cocaine and cocaine base equally, Defendant "would not have been subject to a 10-year mandatory minimum sentence on Count 3." (*Id.*) Instead, he

argues he "would have received a sentence of no higher than 180 months' imprisonment." (*Id.*, PageID.43.)

In support of his argument, Defendant refers to the EQUAL Act passed by the House of Representatives on September 28, 2021. (*Id.*, PageID.41.) According to Defendant, the EQUAL Act "completely eliminates the disparity between the amount of crack cocaine and powder cocaine that triggers mandatory minimums." (*Id.*) The bill "also provides an opportunity for people who received mandatory minimums for crack offenses in the past to receive a fair sentence under the new law." (*Id.*)

Attorney Zambon has addressed this claim of ineffective assistance as follows:

I note that the effective date of the EQUAL Act, September 28, 2021, was approximately 18 months *after* [Defendant's] sentencing. [Defendant] concludes that had I "sought a downward variance" based on the crack/powder disparity the [C]ourt would have necessarily granted the variance. This is highly speculative and conclusory and any failure to anticipate a change in the law is not ineffective assistance on my part.

(ECF No. 8, PageID.68.)

As an initial matter, although Defendant indicates that the House of Representatives passed the EQUAL Act on September 28, 2021, the bill has not yet passed by the Senate and been enacted into law by the President. Thus, it is not yet binding authority upon the courts. Even if it were binding authority, Defendant was sentenced on March 23, 2020, and attorney Zambon cannot be deemed ineffective for failing to anticipate a change in the law. *See Nichols v. United States*, 563 F.3d 240, 253 (6th Cir. 2009); *see also Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) (noting that non-egregious errors "such as failure to perceive or anticipate a change in the law . . . cannot be considered ineffective assistance of counsel").

Moreover, Defendant cannot demonstrate prejudice from attorney Zambon not requesting a downward variance on this basis. At sentencing, the undersigned stated: "I also fully recognize

my discretion in determining an appropriate sentence as recognized by the United States Supreme Court in its decisions in *Booker*, *Kimbrough*, *Rita*, *Gall*, *Spears*, and the Sixth Circuit case of *Herrera-Zuniga*." *See* Sentencing Tr., *United States v. Miller*, No. 1:18-cr-220 (ECF No. 128, PageID.1169). Defendant relies upon *Kimbrough* and *Spears* in support of his argument. In those cases, the Supreme Court recognized that district courts may "reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." *Spears v. United States*, 555 U.S. 261, 266 (2009); *see also Kimbrough*, 552 U.S. 85, 91, 110 (2007). Thus, by explicitly referring to *Spears* and *Kimbrough*, the Court recognized that it could vary from the crack-cocaine guidelines, but ultimately chose not to. Accordingly, Defendant is not entitled to relief with respect to this assertion of ineffective assistance.

In sum, Defendant has not demonstrated that attorney Zambon rendered ineffective assistance of counsel at sentencing in the two ways Defendant suggests. Defendant, therefore, is not entitled to relief with respect to ground II.

### 3.    Ground III—Ineffective Assistance of Appellate Counsel

As his third and final ground for relief, Defendant contends that appellate counsel was ineffective for failing to "argue on appeal that the 6-level enhancement under U.S.S.G. § 3A1.2(c)(1)[] was improperly applied when no evidence was presented that [Defendant] assaulted a law enforcement officer." (ECF No. 1-1, PageID.43.)

U.S.S.G. § 3A1.2(c)(1) provides for a six-level increase in the defendant's offense level "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant[,] knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom." U.S.S.G. § 3A1.2(c)(1). The Sentencing Commission's commentary provides that "substantial risk of serious bodily

injury" includes "any more serious injury that was risk, as well as actual serious bodily injury (or more serious injury) if it occurs." *Id.* cmt. B.

Prior to sentencing, a Probation Officer prepared Defendant's Presentence Investigation Report (PSR) and determined that the six-level increase called for by § 3A1.2(c)(1) applied because "defendant almost struck an identified officer with his vehicle while attempting to flee." *See* PSR, *United States v. Miller*, No. 1:18-cr-220 (W.D. Mich) (ECF No. 109, PageID.1000). As set forth in the offense conduct section of the PSR, on August 17, 2018, "investigators were attempting to locate [Defendant] after he failed to appear in court for prior felony narcotic charges." *Id.* (ECF No. 109, PageID.997). Investigators saw Defendant enter and exit a residence multiple times, and after several hours, they saw Defendant leave the residence "with a white plastic grocery bag that was weighted down as if it contained something heavy. He walked to a vehicle and exited the parking lot in the vehicle." *Id.*

Defendant then drove to a shopping plaza and parked in the parking lot. *Id.* Investigators saw two individuals go into the front passenger seat one after another and believed that Defendant was conducting illegal drug sales. *Id.* (ECF No. 109, PageID.997–998). Then,

> [i]nvestigators and a uniformed officer pulled behind [Defendant's] vehicle and approached the driver's door with their duty weapons drawn. They gave loud verbal commands for [Defendant] to put his hands up. They observed what appeared to be a plastic bag of cocaine his right hand. [Defendant] appeared to be in a panic and attempted to conceal the bag of cocaine between the center console and the driver's seat. After several seconds, he tossed the bag onto the center console and put the vehicle in reverse, attempting to flee. **[[Defendant] drove backwards striking the parked patrol vehicle and nearly striking an officer.]** Fearing [Defendant] was going to run them over with his vehicle an officer pointed his firearm at [Defendant] and stated he would be shot if he did not stop the vehicle. [Defendant] eventually did as he was instructed and stopped the vehicle.

*Id.* (ECF No. 109, PageID.998).

Attorney Zambon objected to the six-level increase, arguing that Defendant "drove backwards less than 5 feet" and that "in no way did he 'nearly strike' an officer." *Id.* (ECF No. 109,

PageID.1023). The Probation Officer noted that the objection would need resolved at sentencing. *Id.* The Probation Officer noted that if the Court sustained the objection, then a two-level enhancement for reckless endangerment during flight under U.S.S.G. § 3C1.2 should apply. *Id.* (ECF No. 109, PageID.1024).

The parties addressed the applicability of § 3A1.2(c)(1) at sentencing. The government presented two videos—one from the in-car camera of an Ingham County Sheriff's Deputy's car that arrived on scene, and one from the body camera of Officer John Cosme, who approached Defendant's car. *See* Sentencing Tr., *id.* (ECF No. 128, PageID.1157). After playing the videos for the Court, the government noted that an officer who was on the passenger's side of the car had "put[] his hand on the passenger rear side as [Defendant] is backing up, and he has to back up with it." *Id.* (ECF No. 128, PageID.1159). Attorney Zambon argued that Officer Cosme, the alleged victim, was not nearly hit by Defendant's vehicle and that Defendant's act of backing up his car did not constitute assault. *Id.* Attorney Zambon noted further that Defendant's car could not go any further because it hit the patrol car. *Id.* (ECF No. 128, PageID.1160).

The government noted that there were three people who could be potential victims—"the three officers who are in the immediate vicinity of [Defendant's] car as he rams the patrol car behind him." *Id.* Attorney Zambon argued that Officer Cosme could not be a victim because he came up to the car with a gun and did not "jump out of the way or do anything else." *Id.* The government noted that while the enhancement was based upon Officer Cosme's testimony, "the PSR does not restrict to any particular officer, it's the entire course of conduct, and I think there is one if not three officers who sufficed." *Id.* (ECF No. 128, PageID.1163).

The Court ultimately overruled the objection, concluding that it was "not believable that [Defendant] did not know that these individuals that were approaching him were police officers."

*Id.* (ECF No. 128, PageID.1164). The Court also cited case law to conclude that Defendant did commit an assault by backing up his car because the vehicle's pathway was stopped not by any action Defendant took, but because Defendant hit the patrol car. *Id.*

Attorney Camp has addressed Defendant's claim of ineffective assistance in his affidavit, stating that he filed a corrected brief on Defendant's behalf on September 9, 2020. (ECF No. 10-3, PageID.107.) Attorney Camp included a letter "explain[ing] the actions that were taken on [Defendant's] behalf and addressed the reasons for taking said actions." (*Id.*) With respect to the issue of the six-level enhancement, attorney Camp provided Defendant with the following reasoning for not raising a challenge on direct appeal:

> I reviewed the ruling of the district court concerning this objection. The burden in a sentencing hearing is preponderance of the evidence. The circuit court will give a great deal of deference to the district court as to findings during sentencing. It is important to note that the district court ruled expressly that your version of the events w[as] not credible. The determination of credibility by the district court is given great weight on appeal because the circuit court is not in a position to judge credibility based solely on a review of the transcript. Accordingly, the findings of the district court would have been affirmed by the circuit court because of the low burden of proof on the government as well as the subjective observations and determinations made by the district court.

(*Id.*, PageID.115–116.)

Upon review of the record and pertinent authority, the Court concludes that Defendant has not demonstrated that attorney Camp was ineffective because he has not demonstrated that his argument concerning the 6-level enhancement "was clearly stronger than issues that [attorney Camp] did present." *Smith*, 528 U.S. at 289. For purposes of § 3A1.2(c)(1), assault is "defined according to its common-law definition." *United States v. Jones*, 740 F.3d 127, 138–39 (3d Cir. 2014). As the First Circuit has noted:

> Common law assault embraces two different crimes: one is attempted battery, that is, an intended effort to cause bodily harm to another which falls short of success . . . regardless of whether the intended victim knows of the attempt ... The other branch of assault *is an act which is intended to, and reasonably does, cause the*

> *victim to fear immediate bodily harm;* such "menacing" constitutes assault even if
> no physical harm is attempted, achieved, or intended.

*United States v. Lee*, 199 F.3d 16, 18 (1st Cir. 1999) (emphasis added) (citations omitted).

In *United States v. Varner*, 598 F. App'x 389 (6th Cir. 2015), the Sixth Circuit considered the appropriateness of a six-level enhancement under § 3A1.2(c)(1) when considering Varner's direct appeal. Varner and a codefendant had robbed a T-Mobile store "before leading authorities on a multi-state, high-speed car chase." *Id.* at 390. "At some point during the chase, defendants abruptly changed lanes and drove toward an officer who was deploying a spike strip on the side of the road. The officer moved to avoid being hit." *Id.* Varner argued that because he was not aware of video footage that supported the six-level enhancement at the time he entered his guilty plea, his guilty plea was invalid. *Id.* at 391. The Sixth Circuit rejected that argument and declined to address his ineffective assistance claim. *Id.* at 392.

The Sixth Circuit also upheld the applicability of the six-level enhancement in *United States v. Thompson*, 597 F. App'x 318 (6th Cir. 2015). Thompson was wanted for failing to update his sex offender registration. *Id.* at 319. A federal marshal spotted Thompson and signaled for him to stop. *Id.* Thompson stopped for a moment but drove away, causing officers to chase him. *Id.* The Sixth Circuit then set forth the following facts:

> Thompson soon lost control of his car due to slippery roads and slid into another car. The officers caught up to Thompson and got out of their cars. The marshal then walked towards the crashed cars—gun drawn—yelling at Thompson to show his hands. Thompson initially put both hands up. Once the marshal was two or three feet away from the driver's door, however, Thompson put his right hand down to shift gears (eliciting another yell from the marshal), smiled at the marshal, and floored the accelerator, sending the Suburban lurching towards the marshal. Fearing for his life, the marshal fired several shots at Thompson, hitting him twice. Thompson veered away from the marshal and then drove to his brother's house, where he was arrested.

*Id.* The Sixth Circuit noted that the district court had credited the marshal's testimony over that given by Thompson, and that the "facts show that Thompson knew full well where the marshal was when Thompson put the car into gear and floored the accelerator." *Id.* at 320.

Here, Defendant contends that *Varner* and *Thompson* are inapplicable because, unlike the defendants in those cases, he "took no action to menace and make an office[r] believe that [Defendant] was going to strike an officer with his vehicle." (ECF No. 11, PageID.133.) Defendant cites *United States v. Pruitt*, 999 F.3d 1017 (6th Cir. 2021) for the assertion that § 2A1.3(c)(1) does not apply when no injury is inflicted because "a mens rea of recklessness does not satisfy the assault element of the official-victim enhancement." (ECF No. 11, PageID.133.)

In *Pruitt*, the Sixth Circuit noted that its "review of the application of U.S.S.G. § 3A1.2(c)(1) to the facts of a given case should be deferential." 999 F.3d at 1020. In that matter, Pruitt argued that the enhancement should not apply because the officer did not sustain an injury as a result of Pruitt's conduct and so no assault occurred. *Id.* The Sixth Circuit disagreed. In so doing, the Sixth Circuit cited its previous opinion in *United States v. Coleman*, 64 F.3d 1047 (6th Cir. 2012), noting that it did not read "*Coleman* as holding that § 3A1.2(c)(1) has no intent requirement, or that a means rea of recklessness satisfies the assault element of the official-victim enhancement, even when no injury is inflicted." *Id.* at 1022. Instead, the Sixth Circuit noted, "[i]ntent to cause bodily harm is not a stated requirement of the enhancement; what is required is an assault under the requisite circumstances." *Id.* The *Pruitt* Court thus noted that "*Coleman*'s rejection of an intent requirement is limited by its context; when injury has occurred and the evidence supports a finding of purposeful, knowing or reckless conduct that 'causes bodily harm.'" *Id.* at 1022–23. Ultimately, the *Pruitt* Court determined that the district court had failed to make

"findings adequate to enable us to determine whether the enhancement is proper" and remanded the matter on that basis. *Id.* at 1023.

*Coleman* itself provides support for the application of the six-level enhancement in Defendant's case. Coleman robbed a branch of Suntrust Bank in Memphis and "attempted to flee with the stolen money in a Ford Mustang driven by Trisha Jones." *Coleman*, 664 F.3d at 1048. When police approached, Jones stopped the car and jumped out. *Id.* Coleman then "hopped into the driver's seat and drove off, hitting one of the police cars and injuring an officer." *Id.* At sentencing, the district court applied the six-level enhancement under § 3A1.2(c)(1). *Id.*

On appeal, Coleman argued that the enhancement should not have applied because "he acted 'recklessly due to fear rather that with 'intent to cause bodily harm' when he rammed the police vehicle with his Mustang." *Id.* at 1051. The Sixth Circuit rejected that argument, noting that "neither the text of nor the commentary to § 3A1.2(c)(1) suggests an intent requirement. On the contrary, § 3A1.2(c) requires only that the defendant's conduct "creat[e] a substantial risk of serious bodily injury" to people that he knew or should have known were law enforcement officers. This phrasing evokes the common law definition of recklessness." *Id.* At Coleman's sentencing, the district court concluded that an assault had occurred because Coleman saw the police car, knew the car was there, and hit it. *Id.* at 1051–52. The Sixth Circuit affirmed that conclusion "[i]n the absence of grounds for viewing the district court's finding as clearly erroneous." *Id.* at 1052.

At Defendant's sentencing, the undersigned made findings similar to those at issue in *Coleman*, stating:

> The defendant's objection is overruled, number one, it is not believable that Mr. Miller did not know that these individuals approaching him were police officers. That just strains credibility beyond the breaking point.

> Second, as to whether an assault occurred, which of course, is required by the *Jones* case, at 740 F.3d 127, that's a Third Circuit, 2014 case, the Court also notes *Coleman*, at 664 F.3d 1047, a 2012 Sixth Circuit case, *Snowden*, 602 Federal

29

Appendix 294 at 297, a 2015 case. Mr. Miller put his car in reverse, started to reverse the car in an attempt to get away. The officer on the right rear passenger's side, in the Court's judgment, having looked at the tape, unless he had moved, which he did, and Mr. Miller's car was stopped by the patrol car, in the Court's judgment, Mr. Miller assaulted that officer.

As far as Mr. Cosme is concerned, Mr. Miller is backing up, and the front of the car is—Mr. Miller's car, is moving towards Mr. Cosme, again—Officer Cosme, again, the pathway of the vehicle is stopped not because of anything Mr. Miller did, but because the patrol car has stopped Mr. Miller.

So I think both of those officers were assaulted within the meaning of the—having viewed the tape, I think both of those officers were assaulted within the meaning of the guideline enhancement.

See Sentencing Tr., *United States v. Miller*, No. 1:18-cr-220 (W.D. Mich.) (ECF No. 128, PageID.1164–1165). By concluding that Defendant was not credible, the Court essentially decided that Defendant knew that the law enforcement officers were there and still made the decision to put his car in reverse in an attempt to get away, thereby creating a "substantial risk of serious bodily injury."

In light of the foregoing, the Court cannot agree with Defendant that attorney Camp was ineffective for failing to challenge the six-level enhancement on direct appeal. Given the undersigned's findings set forth above, the reliance upon *Coleman*, and the deferential standard that the Sixth Circuit applies to factual conclusions regarding sentencing enhancements, Defendant has not demonstrated a reasonable probability that any challenge to the enhancement would have been successful in the Sixth Circuit. Accordingly, Defendant is not entitled to relief with respect to ground III.

In sum, Defendant has failed to demonstrate that he would have foregone the plea agreement and proceeded to trial, and he has failed to demonstrate that counsel rendered ineffective assistance in the ways he argues. Defendant, therefore, is not entitled to relief on his § 2255 motion.

Furthermore, because the record conclusively establishes that Defendant is not entitled to relief, there is no need for the Court to conduct an evidentiary hearing.

## III.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Defendant has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Defendant's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Defendant's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Defendant's claims was debatable or wrong. Therefore, the Court will deny Defendant a certificate of appealability. Moreover, although Defendant has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Defendant might raise on appeal

would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## IV.    Conclusion

For the foregoing reasons, the Court will deny Defendant's § 2255 motion. Accordingly,

**IT IS ORDERED** that Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

A separate judgment will follow. *See Gillis v. United States*, 729 F.3d 641, 643 (6th Cir. 2013) (requiring a separate judgment in habeas proceedings).

Dated:   November 15, 2024                          /s/ Paul L. Maloney
                                                     Paul L. Maloney
                                                     United States District Judge